**SO ORDERED.**

**SIGNED this 15 day of July, 2020.**



_____
**David M. Warren
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-04165-5-DMW |
| LORI JAYNE KIMBLER | CHAPTER 7 |
| DEBTOR | |

### ORDER IMPOSING SANCTIONS AGAINST GARY DORITY
### FOR VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION

This matter comes before the court upon the verified Motion for Sanctions Pursuant to 11 U.S.C. §§ 362 and 524 ("Sanctions Motion") filed by Lori Jayne Kimbler ("Debtor") on March 31, 2020. The court conducted a hearing on June 25, 2020 in New Bern, North Carolina. Jonathan E. Friesen, Esq. ("Mr. Friesen") appeared for the Debtor, and Gary Dority ("Mr. Dority") appeared *pro se*. The Debtor testified on her own behalf, and the court admitted ten exhibits presented by the Debtor. Mr. Dority and Andrea Dority ("Mrs. Dority") testified on behalf of Mr. Dority. Based upon the evidence presented and arguments of the parties, the court makes the following findings of fact and conclusions of law:

Background

In January 2019, the Debtor opened a sole proprietor retail business in Havelock, North Carolina named Cherishables Antiques for the purpose of selling antiques and other collectibles. As part of the business, the Debtor rented "booth" spaces within the store to outside vendors. The vendors displayed and priced items within their booths for sale by Cherishables Antiques, and the Debtor earned a commission on items sold. On March 1, 2019, the Debtor and Mr. Dority entered into a contract pursuant to which Mr. and Mrs. Dority rented a vendor booth at Cherishables Antiques for $125.00 per month plus a commission of 10% on items sold for less than $100.00 and 15% on items sold for $100.00 or greater.

In May or June 2019, Cherishables Antiques closed. The Debtor testified that the closure was mainly due to ongoing lighting issues in the business premises that were not being addressed by the landlord and which caused the store to be too dark to attract customers and caused many vendors to leave. In addition, the Debtor suffers from medical issues which were making operation of the business difficult. Prior to closing, the Debtor notified vendors of the pending closure of Cherishables Antiques and asked them to remove their inventory. The Debtor testified that she had a procedure for reconciling inventory and sales with vendors, but Mr. and Mrs. Dority failed to follow this procedure when they retrieved their items. The Debtor stated that someone came to the store and told her that they were picking up property for Mr. and Mrs. Dority and removed several items. The Debtor opined that when Cherishables Antiques closed, Mr. and Mrs. Dority owed her approximately $150.00,[1] and that Cherishables Antiques did not owe them anything. The Debtor understood, however, that Mr. Dority claimed that Cherishables Antiques owed him $3,989.25.[2]

---

[1] The Debtor did not indicate whether this amount represented rent, commissions, or a combination.
[2] It is unclear from the record how the Debtor learned of or determined this amount.

On August 16, 2019, Mr. Dority filed a Complaint for Money Owed ("Small Claims Complaint") against the Debtor and Clay Kimbler[3] in the Small Claims Division of the District Court for Craven County, North Carolina ("State Court"), File Number 19 CVM 805 ("Small Claims Action").  The Small Claims Complaint alleges that the Debtor owes Mr. Dority the amount of $1,400.00 because she "sold items of mine and never gave me the money from the sales."  The State Court scheduled a trial on the Small Claims Complaint for September 5, 2019; however, this trial was postponed to September 12, 2019 due to Hurricane Dorian.

On September 11, 2019, the Debtor filed *pro se* a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.  The Debtor did not file at this time the schedules and statements required under 11 U.S.C. § 521(a); however, the Debtor attached to her petition a mailing matrix[4] which listed Mr. Dority with the amount of $3,989.25 noted next to his name.  The Debtor testified that she used this amount, because it is what she believed that Mr. Dority asserted as the amount he believes he is owed by the Debtor and Cherishables Antiques.

On September 12, 2019, a magistrate conducted a trial in the Small Claims Action, and both the Debtor and Mr. and Mrs. Dority appeared at the trial.  The Debtor advised the magistrate of her bankruptcy filing, and the magistrate adjourned the trial as being stayed by the Debtor's bankruptcy petition.  The parties' testimonies differ on the other events at that trial.  Mr. Dority testified that he presented the magistrate with the Debtor's ledger of his account with Cherishables Antiques, and that the Debtor admitted that she owed him amounts reflected in this record.[5]  The Debtor stated that this "ledger" was merely a record of items sold and did not reflect rent or

---

[3] Clay Kimbler is the Debtor's son.
[4] The mailing matrix did not include an address for Mr. Dority.
[5] Mr. Dority asserted he had this ledger with him at the hearing on the Sanctions Motion but did not present it to the court or ask that it be admitted into evidence.

3

commissions due from Mr. Dority, and the Debtor denied that she admitted owing the amount sought in the Small Claims Complaint.

The Debtor testified that Mr. Dority became angry when the magistrate adjourned the hearing. Mr. Dority told the Debtor that she could not take his money, and that he would file embezzlement charges against her. Mr. Dority explained that after the hearing, the magistrate and others in the State Court advised Mr. Dority that he should seek criminal embezzlement charges against the Debtor, because by filing for bankruptcy relief, the Debtor "did not have to pay him unless she wanted to." Based upon this advice,[6] Mr. Dority went to the Havelock Police Department to file a criminal complaint.

On October 24, 2019, the State Court issued three Warrants for Arrest of the Debtor for felony charges of embezzlement, File Numbers 19 CR 53536-53538 (collectively "Criminal Action"), described respectively as follows: $159.75 received from consigned items in April 2019; $1,237.93 received from consigned items in May 2019; and $107.10 received from consigned items in June 2019. In each of the Warrants for Arrest, Mr. Dority is named as a witness. On October 30, 2019, the Debtor was arrested, and the State Court set a bail amount of $4,500.00. The Debtor was unable to post this amount and was incarcerated at the Craven County Detention Facility. About a week later, the Debtor made her first court appearance and was approved for release with an electronic monitoring device on her ankle; however, the Debtor remained in jail for approximately ten more days before she received the ankle monitor and was released. The Debtor was required to pay $883.00 for use of the ankle monitor.

---

[6] No other evidence corroborated that the magistrate provided legal advice; however, if that assertion is true, the action by the magistrate is improper. In North Carolina, a magistrate is an officer of the state's district court. N.C. Gen. Stat. § 7A-170(a) (2015). A judicial officer should not provide legal advice and counsel which is a violation of Canon 2(A) of the North Carolina Code of Judicial Conduct. *In re Cornelius*, 335 N.C. 198, 207, 436 S.E.2d 836, 842 (1993).

4

The Debtor described her experience in jail as degrading. She was not provided immediate and continued access to certain medications for her degenerative disc disease, resulting in muscle spasms and incontinence. The Debtor was sixty-one years old at the time of her incarceration, and her age made it more difficult to adapt to the incarceration. After the Debtor was released from jail with the ankle monitor, she was restricted in her activities outside of her home and had to coordinate outings with an officer.[7] She was prohibited from working with a local advertising business she began after closing Cherishables Antiques and from which she was earning approximately $1,000.00 a month. She was also unable to seek alternative employment. The Debtor testified that the entire experience of being jailed and on home arrest caused severe emotional distress, and she was especially humiliated by the effect and community stigma on her nineteen-year-old son who was working three jobs while assisting her. In total, the Debtor was incarcerated for approximately sixteen days and wore the ankle monitor for approximately 120 days until it was removed during the Covid-19 pandemic.

On December 30, 2019, the court granted the Debtor a discharge pursuant to 11 U.S.C. § 727, and on December 31, 2019, the court entered a Final Decree and closed the bankruptcy case. On January 1, 2020, the court served a copy of its Order of Discharge on Mr. Dority.[8] On January 3, 2020, Mr. Friesen sent a letter ("Stay Violation Letter") to Mr. Dority and the Craven County District Attorney ("DA") asserting that Mr. Dority violated the automatic stay imposed by 11 U.S.C. § 362 by initiating the Criminal Action after the Debtor filed for bankruptcy protection and for the primary purpose of collecting a dischargeable debt. The Stay Violation Letter directed

---

[7] The record is unclear if the officer was a member of the Havelock Police Department or some other officer with the North Carolina Department of Public Safety.

[8] The Debtor provided the court with Mr. Dority's address in her schedules filed on September 25, 2019.

Mr. Dority to cease efforts to collect a pre-petition debt from the Debtor and stated that the Debtor may file an action for sanctions against Mr. Dority.

After the Stay Violation Letter, Mr. Dority did not take any action to request the DA to dismiss the Criminal Action, and the DA did not otherwise dismiss the Criminal Action which is still pending in the State Court. The Debtor made court appearances on January 8, 2020 and March 3, 2020, and neither Mr. Dority nor a representative of the DA's office appeared at these hearings, and the Criminal Action was continued.[9]

On March 27, 2020, the court reopened to the Debtor's bankruptcy case to allow her to file the Sanctions Motion. In the Sanctions Motion, the Debtor asserts that Mr. Dority's actions in initiating the criminal embezzlement charges against her and failing to seek dismissal of the Criminal Action violate that automatic stay imposed by 11 U.S.C. § 362 and the discharge injunction imposed by 11 U.S.C. § 524. The Debtor seeks actual and punitive damages resulting from these violations, including attorneys' fees and expenses. At the hearing on the Sanctions Motion, Mr. Dority ignorantly questioned the relevance of the Debtor's bankruptcy case with the Criminal Action but repeatedly admitted that he wanted the Debtor to pay him "his money" allegedly owed by the Debtor. After the hearing, on June 29, 2020, Mr. Friesen filed a Statement of Attorneys' Fees, including applicable invoices, attesting that he incurred fees of $7,096.50 representing the Debtor in connection with the Sanctions Motion.

## Discussion

*Jurisdiction*

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter

---

[9] The parties did not elaborate if the DA did not call the case or simply continued the hearings to later dates. Regardless, the Debtor appeared as ordered while Mr. Dority, a necessary witness, did not.

6

jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

*Automatic Stay*

The filing of a bankruptcy petition operates as a stay of—

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). The magistrate presiding over the Small Claims Action was aware of this automatic stay and correctly suspended the trial upon learning of the Debtor's bankruptcy petition.

Beyond staying civil actions and proceedings, that automatic stay bars "*any act* to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6) (emphasis added). "The automatic stay is a bedrock principle upon which the Code is built; the importance of § 362 cannot be over-emphasized." *In re Seaton*, 462 B.R. 582, 591 (Bankr. E.D. Va. 2011) (citing *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988)). In *Grady*, the United States Court of Appeals for the Fourth Circuit found the legislative history of the automatic stay to reveal its importance:

> The automatic stay is one of the fundamental debtor protections provided by bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Grady*, 839 F.2d at 200 (quoting House Report No. 95-595, 95th Cong. 1st Sess. 340-1 (1977); Senate Report No. 95-989, 95th Cong. 2d Sess. 54-55 (1978); *reprinted in* 1978 U.S.C.C.A.N. 5787 at 5840 and 6296-97).

The automatic stay is an integral protection of bankruptcy, and "an individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).  "[A] party seeking to recover damages for violation of the automatic stay must establish three elements:  1) that a violation of the stay occurred; 2) that the violation was willful; and 3) that the violation caused actual damages." *In re Ennis*, No. 14-02188-5-SWH, 2015 WL 6555392 at *5 (Bankr. E.D.N.C. Oct. 28, 2015).

As an exception to the automatic stay, the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1).  As a result, the DA was not stayed in filing the Criminal Action against the Debtor.[10]  This court holds, however, that the exception provided by § 362(b)(1) does not permit a creditor to instigate a criminal proceeding against a debtor if the primary purpose is to recover a dischargeable debt.  The Honorable A. Thomas Small explained that—

> a state may initiate or continue criminal prosecutions regardless of the pendency of a bankruptcy case, and further that it may do so even when the state's—or complaining witness's—primary purpose is the collection of a debt.  However, a *creditor* does not have the full protection of § 362(b)(1), and an entity other than the government's prosecuting authority may not commence a criminal action for the primary purpose of recovering a debt that is dischargeable in bankruptcy.  If a creditor has already brought its grievance to the attention of law enforcement officials prior to the debtor's bankruptcy filing, those officials may proceed as they deem appropriate and may elect to prosecute, or not.
>
> . . .
>
> The filing of a bankruptcy action should have no impact on whether a prosecuting entity elects to commence or continue a criminal action against a debtor, even if the action is based on a debt that will be dealt with in the bankruptcy case.  A bankruptcy filing does, however, preclude a *creditor* from seeking to pursue criminal charges against a debtor for the primary purpose of attempting to recover

---

[10] A more astute District Attorney's office would more likely have inquired about the bankruptcy and mitigated some of the damages the Debtor incurred.

8

> a debt. Any effort to do so would violate the automatic stay and, potentially, the discharge injunction provisions of §§ 362(a) and 524(a)(2).

*In re Byrd*, 256 B.R. 246, 251-52 (Bankr. E.D.N.C. 2000) (emphases in original). Judge Small reasoned that a disgruntled creditor should not be permitted to resort to criminal processes to collect a debt, because "[t]he bankruptcy proceedings offer ample protections for creditors who are owed monies due to larceny, fraud or other willful injury inflicted by the debtor." *Id.* at 251 (citing 11 U.S.C. §§ 523(a)(2), 523(a)(4), 523(a)(6)).[11]

Mr. Dority was frank in repeatedly admitting that he wants to be paid what he believes is owed him by the Debtor. When the Debtor's bankruptcy petition stayed his efforts to collect through the Small Claims Action, Mr. Dority made no attempt to evaluate his rights in the bankruptcy case; rather, he decided to pursue recovery through a criminal proceeding. Regardless of whether someone with the State Court "advised" Mr. Dority to pursue criminal charges, Mr. Dority's actions violated the automatic stay as an attempt to collect or recover a claim against the Debtor that arose prior to the commencement of her bankruptcy case.

"To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank of Md. v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994). Mr. Dority received actual notice of the Debtor's bankruptcy petition and the automatic stay at the trial of the Small Claims Action. Rather than participate in the bankruptcy case by either attending the scheduled meeting of creditors or seeking nondischargeability of his claim, Mr. Dority defied the Bankruptcy Code and this court. He initiated state criminal charges against the Debtor either to coerce her to pay him or to punish her for failing to pay, and this act was a purposeful and willful violation of the automatic stay.

---

[11] These sections of the Bankruptcy Code provide exceptions from discharge of debts related to fraud and willful and malicious injury. Specifically, a creditor may seek exception from a debtor's discharge of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

9

The court finds that Mr. Dority's egregious and overt violation caused a willful and malicious injury to the Debtor within the meaning of 11 U.S.C. § 523(a)(6). Even if the Debtor owed Mr. Dority the sum being claimed, the deprivation of the Debtor's liberty harkens back to the days of the debtors' prisons in Victorian England. The hardship the Debtor experienced before, during, and after incarceration is a plight she should have never had. The sole cause of that undeserving hardship are the borderline unlawful and malicious actions of Mr. Dority, who had no contrition, regret, or remorse for the actions he took. This court does not see many bad people, only unfortunate ones who are trying to repay their credits or to obtain a fresh start that the laws passed by Congress allow; however, today the court saw malicious evil sprinkled with reckless indifference.

The Debtor sustained actual damages, because she was not able to work and earn income during her time of incarceration and home arrest, plus she had to pay for use of the ankle monitor. She also incurred attorneys' fees in connection with filing the Sanctions Motion. Far beyond those actual damages is the extensive, deep, harmful, and significant emotional distress the Debtor suffered as a result of the unfettered narcissistic will of Mr. Dority, and that violation of the automatic stay warrants the imposition of punitive damages.

*Discharge Injunction*

A discharge granted in a bankruptcy case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). In *Byrd*, Judge Small alluded that a creditor's pursuit of criminal charges against a debtor for the purpose of collecting a debt may constitute a violation of this discharge injunction in addition to a violation of the automatic stay. The court recognizes that

punitive damages may be appropriate and necessary when a creditor violates the discharge injunction through egregious conduct, malevolent intent, or clear disregard of the bankruptcy laws. *In re Adams*, No. 04-03875-5-SWH, 2010 WL 2721205, at *6 (Bankr. E.D.N.C. July 7, 2010) (citing *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 190 (Bankr. E.D. Va. 2000)).

Mr. Dority was served with a copy of the Debtor's discharge, and the same week, Mr. Friesen sent Mr. Dority the Stay Violation Letter. The Stay Violation Letter clearly advised Mr. Dority of his violations and requested that all collection efforts cease. Mr. Dority ignored the warning and continued to pursue collection through the Criminal Action. Mr. Dority's continued and deliberate failure to withdraw his criminal complaints after the Debtor's discharge constitutes a violation of the discharge injunction, further supporting sanctions against the Debtor; now therefore,

It is ORDERED, ADJUDGED, and DECREED as follows:

1. The Sanctions Motion be, and hereby is, granted; and

2. Mr. Dority be, and hereby is, directed to pay to the Debtor within thirty days of the date of this Order sanctions in the total amount of $40,979.50, computed as follows:

    a. Actual damages for lost income of $1,000.00 per month for five months totaling $5,000.00;

    b. Actual damages for the cost of the ankle monitor totaling $883.00;

    c. Actual damages for Mr. Friesen's attorneys' fees totaling $7,096.50;

    d. Punitive damages in the amount of $1,000.00 for each of the sixteen days that the Debtor was incarcerated totaling $16,000.00; and

   e. Punitive damages in the amount of $100.00 for each of the approximately 120 days that the Debtor wore an ankle monitor totaling $12,000.00.

END OF DOCUMENT