

**SO ORDERED.**

**SIGNED this 16 day of December, 2020.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

IN RE:                                                                          CASE NO. 19-04165-5-DMW

LORI JAYNE KIMBLER

                                              CHAPTER 7

      DEBTOR

## ORDER IMPOSING SANCTIONS AGAINST
## ROBERT L. HILL AND BOB HILL ENTERPRISES, INC. FOR
## VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION

       This matter comes before the court upon the verified Motion for Sanctions Pursuant to 11

U.S.C. §§ 362 and 524 ("Sanctions Motion") filed by Lori Jayne Kimbler ("Debtor") on October

30, 2020 and the Response filed by Robert L. Hill ("Mr. Hill") and Bob Hill Enterprises, Inc.

("BHE") (collectively "Hill") on November 13, 2020.  The court conducted a hearing on December

10, 2020 in New Bern, North Carolina.  Jonathan E. Friesen, Esq. ("Mr. Friesen") appeared for the

Debtor, and John W. King, Jr., Esq. appeared for Hill.  The Debtor testified on her own behalf,

and the court admitted three exhibits presented by the Debtor.  Diane Ferguson ("Ms. Ferguson")

testified on behalf of Hill, and the court admitted four exhibits presented by Hill.  Based upon the

evidence presented and arguments of counsel, the court makes the following findings of fact and conclusions of law:

Background

On January 1, 2019, the Debtor began leasing from Hill real property ("Premises") located in Havelock, North Carolina in which she operated an antiques store.  On May 8, 2019, the Debtor wrote a check ("Check 1043") for rent in the amount of $577.50 and made payable to Mr. Hill. On or about May 13, 2019, Check 1043 was returned to Hill for being drawn on an account containing insufficient funds.  The Debtor closed her business and vacated the Premises on or about May 31, 2019.

The Debtor communicated generally about her lease of the Premises with Ms. Ferguson, an employee of Hill who handles rentals and collections.  Ms. Ferguson called the Debtor after Check 1043 was returned and spoke with the Debtor on several other occasions about the rent delinquency.  Each time, the Debtor acknowledged the debt and assured Ms. Ferguson that she intended to make payment when she could.  Ms. Ferguson testified that she was aware that the Debtor was experiencing health issues and recently had surgery, so she and Hill were being patient in seeking collection of the debt.

On September 11, 2019, the Debtor filed *pro se* a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.[1]  The Debtor did not file at this time the schedules and statements required under § 521(a) but attached to her petition a mailing matrix which included Mr. Hill with the amount of $750.00 noted next to his name.  The Debtor provided an incorrect address for Mr. Hill in the mailing matrix;[2] however, the Debtor testified that she hand-delivered

---

[1] Except for within formal citations, all references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

[2] The Debtor corrected the address in her schedules filed on September 25, 2019.

the court's Notice of Chapter 7 Bankruptcy Case ("Notice") to Hill's office on September 11, 2019.  She stated that Ms. Ferguson was not there when she left the Notice.

On September 12, 2019, Ms. Ferguson sent a letter ("Demand Letter") to Ms. Kimbler demanding payment for $607.50, the amount of Check 1043 plus $30.00 in returned check and bank fees.  The Demand Letter was written on BHE letterhead, and Ms. Ferguson signed the Demand Letter as "Bob Hill."  Ms. Ferguson testified that Mr. Hill was not specifically aware of the Demand Letter, which she drafted from a form used as normal procedure within the scope of her employment duties to collect outstanding debts.  On September 16, 2019, the Debtor received the Demand Letter and went back to Hill's office to notify Hill of her bankruptcy petition.  The Debtor testified that she gave Ms. Ferguson another copy of the Notice.  Ms. Ferguson admitted that the Debtor told her of the bankruptcy filing on September 16, 2019 but denies that the Debtor provided a copy of the Notice or that she or Hill ever received a copy of the Notice.

The Demand Letter stated that if payment of $607.50 was not received within ten days, then "legal papers will be filed.  No further notice will be given before legal steps are taken."  After expiration of this ten-day period, on October 2, 2019, Ms. Ferguson reported the return of Check 1043 to a magistrate with the District Court for Craven County, North Carolina ("State Court").  Ms. Ferguson testified that she understood that a bankruptcy petition stayed collection actions against a debtor but did not believe criminal actions were stayed; however, she did inform the magistrate that the Debtor filed for bankruptcy relief.  On October 3, 2019, the State Court issued a Criminal Summons Misdemeanor Worthless Check, File Number 19 CR 053276 ("Criminal Action"), directing the Debtor to appear before the magistrate on October 31, 2019.  The Criminal Action hearing was continued to a date in December 2019, because the Debtor was incarcerated

3

on October 31, 2019 after arrest for a criminal charge of embezzlement initiated by another creditor in her bankruptcy case.[3]

On December 4, 2019, Mr. Friesen sent a letter ("Stay Violation Letter") by United States mail and facsimile to the attention of Ms. Ferguson at BHE, asserting that initiating the Criminal Action after the Debtor filed for bankruptcy protection and for the primary purpose of collecting a dischargeable debt violated the automatic stay imposed by § 362.  On December 30, 2019, the court granted the Debtor a discharge pursuant to § 727, and on December 31, 2019, the court entered a Final Decree and closed the bankruptcy case.  On January 1, 2020, the court served a copy of its Order of Discharge on Mr. Hill.  Neither Hill nor Ms. Ferguson took any action to dismiss the Criminal Action after receipt of the Stay Violation Letter and the Order of Discharge.

In December 2019, the Debtor appeared at the continued hearing in the Criminal Action. The matter was continued to a date in February 2020, at which time the Debtor again appeared, and then continued again to a date in May 2020.[4]  The Debtor could not recall the reason for these continuances, speculating that Mr. Friesen may have had a conflict.  The Debtor appeared again for a hearing in May 2020 but learned that the Criminal Action was continued until July 2, 2020 due to the COVID-19 pandemic.  At the hearing held on July 2, 2020, the Debtor informed an assistant district attorney for Craven County of her bankruptcy case, and on July 9, 2020, the State Court dismissed the Criminal Action.  Neither Mr. Hill, Ms. Ferguson, nor anyone representing Hill appeared at any hearings in the Criminal Action, and Ms. Ferguson testified that they were unaware of the hearings and did not believe their attendance was necessary.

---

[3] The arrest and incarceration are detailed in an Order Imposing Sanctions Against Gary Dority for Violation of the Automatic Stay and Discharge Injunction entered on July 15, 2020. *In re Kimbler*, 618 B.R. 437 (Bankr. E.D.N.C. 2020).

[4] In her Response, the Debtor provided actual dates for hearings in the Criminal Action which were on weekends.  In testimony, the Debtor acknowledged that she may have mistaken the exact dates but remembered that all hearings were on Thursdays.

In the Sanctions Motion, the Debtor asserts that Hill's initiation of the Criminal Action and subsequent failure to seek dismissal of the Criminal Action violate that automatic stay imposed by § 362 and the discharge injunction imposed by § 524. The Debtor seeks actual and punitive damages resulting from these violations, including attorneys' fees and expenses.  At the hearing on the Sanctions Motion, Mr. Friesen attested that his attorneys' fees for representing the Debtor in connection with the Sanctions Motion were $2,500.00.  Hill defends that they never received the official Notice of the Debtor's bankruptcy case, the Criminal Action was excepted from the automatic stay pursuant to § 362(b)(1), and they were not notified of any continued hearings in the Criminal Action.  In the Response, Hill explained that in the past, they have never received status updates in criminal actions for worthless checks, because the check serves as sufficient evidence, and the State Court will send them any money it collects.  Hill contends that the Debtor was not damaged by the Criminal Action, but to the extent she was, the Debtor failed to mitigate the damages by waiting until July 2, 2020 to inform the State Court of her bankruptcy case.

Discussion

*Jurisdiction*

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1).  The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

*Automatic Stay*

The filing of a bankruptcy petition operates as a stay of—

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).  Beyond staying civil actions and proceedings, that automatic stay bars "*any act* to collect, assess, or recover a claim against the debtor that arose before the commencement of the case."  11 U.S.C. § 362(a)(6) (emphasis added).  "The automatic stay is a bedrock principle upon which the Code is built; the importance of § 362 cannot be over-emphasized." *In re Seaton*, 462 B.R. 582, 591 (Bankr. E.D. Va. 2011) (citing *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988)).  In *Grady*, the United States Court of Appeals for the Fourth Circuit cited the legislative history of the automatic stay to reveal its importance:

> The automatic stay is one of the fundamental debtor protections provided by bankruptcy laws.  It gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Grady*, 839 F.2d at 200 (quoting House Report No. 95-595, 95th Cong. 1st Sess. 340-1 (1977); Senate Report No. 95-989, 95th Cong. 2d Sess. 54-55 (1978); *reprinted in* 1978 U.S.C.C.A.N. 5787 at 5840 and 6296-97).

The automatic stay is an integral protection of bankruptcy, and "an individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).  "[A] party seeking to recover damages for violation of the automatic stay must establish three elements:  1) that a violation of the stay occurred; 2) that the violation was willful; and 3)

that the violation caused actual damages." *In re Ennis*, No. 14-02188-5-SWH, 2015 WL 6555392

at *5 (Bankr. E.D.N.C. Oct. 28, 2015).

As an exception to the automatic stay, the filing of a bankruptcy petition does not operate

as a stay "of the commencement or continuation of a criminal action or proceeding against the

debtor." 11 U.S.C. § 362(b)(1).  As a result, the State Court was not stayed in prosecuting the

Criminal Action against the Debtor; however, "the exception provided by § 362(b)(1) does not

permit a creditor to instigate a criminal proceeding against a debtor if the primary purpose is to

recover a dischargeable debt." *In re Kimbler*, 618 B.R. 437, 442 (Bankr. E.D.N.C. 2020).  In

*Kimbler*, the court relied on the Honorable A. Thomas Small's explanation that—

> a state may initiate or continue criminal prosecutions regardless of the pendency of
> a bankruptcy case, and further that it may do so even when the state's—or
> complaining witness's—primary purpose is the collection of a debt.  However, a
> *creditor* does not have the full protection of § 362(b)(1), and an entity other than
> the government's prosecuting authority may not commence a criminal action for
> the primary purpose of recovering a debt that is dischargeable in bankruptcy.  If a
> creditor has already brought its grievance to the attention of law enforcement
> officials prior to the debtor's bankruptcy filing, those officials may proceed as they
> deem appropriate and may elect to prosecute, or not.
>
>          . . .
>
> The filing of a bankruptcy action should have no impact on whether a prosecuting
> entity elects to commence or continue a criminal action against a debtor, even if the
> action is based on a debt that will be dealt with in the bankruptcy case.  A
> bankruptcy filing does, however, preclude a *creditor* from seeking to pursue
> criminal charges against a debtor for the primary purpose of attempting to recover
> a debt.  Any effort to do so would violate the automatic stay and, potentially, the
> discharge injunction provisions of §§ 362(a) and 524(a)(2).

*In re Byrd*, 256 B.R. 246, 251-52 (Bankr. E.D.N.C. 2000) (emphases in original).  Judge Small

reasoned that a disgruntled creditor should not be permitted to resort to criminal processes to

collect a debt, because "[t]he bankruptcy proceedings offer ample protections for creditors who

are owed monies due to larceny, fraud or other willful injury inflicted by the debtor." *Id.* at 251

(citing 11 U.S.C. §§ 523(a)(2), 523(a)(4), 523(a)(6)).[5]  A creditor's criminal referral of a worthless check debt, whether motivated in whole or in part by a hope of getting reimbursed, constitutes a violation of the automatic stay. *In re Heeley*, No. 14-03291-5-DMW, 2014 WL 7012652, at *2 (Bankr. E.D.N.C. Dec. 11, 2014).

"To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank of Md. v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994).  Ms. Ferguson testified that over the summer of 2019, she and Hill were lenient with the Debtor in their attempt to collect the past due rent after Check 1043 was returned for insufficient funds.  Although their patience would understandably wane after a few months with no payment by the Debtor, it was no coincidence that Ms. Ferguson mailed the Demand Letter the day after the Debtor filed for bankruptcy protection and delivered the Notice to Hill's office.  Even if Hill never received the Notice, Hill received actual notice of the Debtor's bankruptcy petition on September 16, 2020, when the Debtor gave verbal notice to Ms. Ferguson, Hill's agent, about her bankruptcy case. *See Garza v. CMM Enters., Inc. (In re Garza)*, 605 B.R. 817, 828 (Bankr. S.D. Tex. 2019) (holding that verbal notice of a bankruptcy filing provides actual knowledge of the case).

Ms. Ferguson admitted that she understood the automatic stay against collection efforts, but rather than participate in the bankruptcy case by either attending the scheduled meeting of creditors or seeking nondischargeability of Hill's claim, Ms. Ferguson circumvented the process and initiated the Criminal Action.  Although Hill and Ms. Ferguson did not have an opportunity to participate actively in the prosecution of the Criminal Action, the Response evidences their hope that the State Court would order restitution for Hill's benefit and effectively collect this pre-

---

[5] These sections of the Bankruptcy Code provide exceptions from discharge of debts related to fraud and willful and malicious injury.

petition debt for Hill.  Hill is bound by the actual and implied knowledge held by Ms. Ferguson of

the Debtor's bankruptcy case, and Hill is responsible for Ms. Ferguson's actions, which constitute

a purposeful and willful violation of the automatic stay. *See Theokary v. Abbatiello (In re*

*Theokary)*, 444 B.R. 306, 323-24 (Bankr. E.D. Pa. 2011) (holding that a creditor-principal is liable

under § 362(k) for the acts of an agent which willfully violate the automatic stay when those acts

are taken within the scope of their principal-agent relationship).

The Debtor sustained actual damages, because she took the time and effort to attend four

scheduled hearings in the Criminal Action.  She also incurred attorneys' fees in connection with

filing the Sanctions Motion.  Beyond her actual damages, the Debtor suffered emotional distress

from the Criminal Action pending against her for over nine months before being dismissed;

therefore, Hill's violation of the automatic stay warrants the imposition of punitive damages.  The

court is not persuaded by Hill's arguments that the Debtor could have mitigated her damages by

notifying the State Court of her bankruptcy case.  That responsibility fell squarely upon Hill,

especially after receiving the Stay Violation Letter and the Order of Discharge.  But for Hill's

intent to collect the pre-petition debt, the Criminal Action would never exist.

## *Discharge Injunction*

A discharge granted in a bankruptcy case "operates as an injunction against the

commencement or continuation of an action, the employment of process, or an act, to collect,

recover or offset any debt as a personal liability of the debtor, whether or not discharge of such

debt is waived." 11 U.S.C. § 524(a)(2).  In *Byrd*, Judge Small alluded that a creditor's pursuit of

criminal charges against a debtor for the purpose of collecting a debt may constitute a violation of

this discharge injunction in addition to a violation of the automatic stay.  The court recognizes that

punitive damages may be appropriate and necessary when a creditor violates the discharge

injunction through egregious conduct, malevolent intent, or clear disregard of the bankruptcy laws.

*In re Adams*, No. 04-03875-5-SWH, 2010 WL 2721205, at *6 (Bankr. E.D.N.C. July 7, 2010) (citing *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 190 (Bankr. E.D. Va. 2000)).

The Stay Violation Letter clearly advised Ms. Ferguson and Hill of automatic stay violations and requested that all collection efforts cease.  Shortly after receiving the Stay Violation Letter, Hill received notice of the Debtor's Chapter 7 discharge.  Hill's subsequent failure to request dismissal of the Criminal Action constitutes an intentional violation of the discharge injunction, further supporting sanctions against Hill; now therefore,

It is ORDERED, ADJUDGED, and DECREED as follows:

1.      The Sanctions Motion be, and hereby is, granted; and

2.      Hill be, and hereby is, directed to pay to the Debtor within fourteen days of the date of this Order sanctions in the total amount of $3,410.00, computed as follows:

    a.      Actual damages of $100.00 for each of the four times the Debtor attended a hearing in the Criminal Action, totaling $400.00; and

    b.      Punitive damages in the amount of $10.00 for each of the 301 days between the date of the Demand Letter and the dismissal of the Criminal Action, totaling $3,010.00; and

3.      Hill be, and hereby is, directed to pay to Mr. Friesen within fourteen days of the date of this Order the amount of $2,500.00 in satisfaction of the Debtor's actual damages of attorneys' fees and expenses associated with the Sanctions Motion.

END OF DOCUMENT